IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| IN RE SEARCH OF: | ) | No. 1:17cr236 |
| | ) | No. 1:12sw1002 |
| 2122 21ST ROAD NORTH | ) | |
| ARLINGTON, VIRGINIA | ) | |
| | | |
| IN RE SEARCH OF: | ) | No. 1:17cr237 |
| | ) | No. 1:12sw1003 |
| UNIVERSITY OF MANAGEMENT | ) | |
| AND TECHNOLOGY | ) | |
| | ) | |

GOVERNMENT'S OPPOSITION TO YANPING CHEN'S OBJECTION TO
UNITED STATES MAGISTRATE JUDGE'S DENIAL OF HER MOTION TO SHOW CAUSE

INTRODUCTION

On March 10, 2017, Yanping Chen filed a motion to show cause before United States

Magistrate Judge John F. Anderson asking the court to hold a hearing relating to the

government's alleged disclosure of photographs that were seized during a search of Chen's

residence.  Chen asked for the hearing to determine, among other things, "the identity of the

official/s [supposedly] responsible for the disclosure of the documents or information acquired as

part of the investigation of this matter." Chen Mot. 4.  The United States does not concede any

disclosure by government officials as claimed by Chen.  However, as discussed below, even if

the "disclosure" hypothetically involved materials obtained from a search and hypothetically

originated from within the government, there was no violation of FED. R. CRIM. P. 6(e).  The

Magistrate Judge so found and denied Chen's motion.

On May 22, 2017, after her first motion was denied, Chen filed a second motion to show

cause, which was based upon an alleged violation of the Privacy Act, 5 U.S.C. § 552.  Chen's

pleading was styled a "second addendum" to her original motion to show cause, and Chen later filed a "third addendum."  The Magistrate Judge found that neither the Privacy Act nor the federal rules provided jurisdiction for a Magistrate Judge to consider such a claim in the context of a proceeding relating to the issuance of a search warrant.  The court therefore denied Chen's second motion to show cause.

Chen's Privacy Act argument before the Magistrate Judge consisted of two short paragraphs, and it neither attempted to establish that evidence obtained during a lawful search falls within the scope of the Privacy Act, nor did it address the many exceptions that are applicable to the provisions of the Act even if evidence from a search would otherwise be within its scope.  Chen's current pleading before this Court is no better.  It does not appear that *any* court has held that the alleged disclosure of an item seized during the execution of a search warrant could constitute a violation of the Privacy Act, and Chen has certainly not pointed to any.

As Judge Anderson found, there was no evidence of a violation of FED. R. CRIM. P. 6(e).  As Judge Anderson further found, nothing in the Privacy Act nor the federal rules supplies jurisdiction to consider Chen's obscure request for "relief."  Because the Magistrate Judge lacked jurisdiction, this Court too lacks jurisdiction to consider the matter.  *If* Chen has any remedy for the alleged violation of the Privacy Act, jurisdiction is conferred *only* by that statute, which requires an original civil action filed with the district court.

For these and the other reasons that follow, Chen's objection to the Magistrate Judge's denial of her motions should be overruled.

ARGUMENT

I.    THERE WAS NO VIOLATION OF FED. R. CRIM. P. 6(E).

FED. R. CRIM. P. 6(e) applies only to "matters occurring before the grand jury," and does not apply to documents and other materials obtained through other sources during the course of an investigation conducted by a law enforcement agency.

> It is important to bear in mind that law enforcement investigations typically precede, or occur simultaneously with but independently of, grand jury investigations. Leaks of information from law enforcement investigations that relate to matters under grand jury investigation do not concern "matters before the grand jury," unless, of course, they disclose secret details about proceedings inside the grand jury room.

*United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007) (Ellis, J.).

Here, whatever the provenance of its information, nothing in the Fox News article or any other media report "disclose[d] secret details about proceedings inside the grand jury room." *Id.* Indeed, the single reference to a grand jury came from Stephen Rhoads, a former employee of Chen's university. According to the article, Rhoads said that "he was instructed by the FBI to tell Chen that he was going to testify before a Virginia grand jury."[1] Notably, the article did *not* claim that the FBI itself said *anything* about a grand jury, and no source – no matter how obliquely mentioned in the article – said that Rhoads was, *in fact*, going to testify before a grand jury.

It is significant that, in addition to Rhoads, the article mentioned eighteen other sources for the story:

---

[1] Rhoads was by far the most frequently-cited source for the article and was described as "a military veteran turned whistleblower" who "said he worked at UMT." According to the article, Rhoads "sa[id] he worked with the FBI on the case."

1.      "The University of Management and Technology";

2.      "Documents reviewed by Fox News";

3.      "Photos, exclusively obtained by Fox News";

4.      "Three independent experts";

5.      "Emails and other documents reviewed by Fox News";

6.      "Chen's immigration records";

7.      "Dennis Blasko, a leading Chinese military expert";

8.      Chen's "George Washington University dissertation";

9.      An "interview summary" said to be of Chen's "2012 FBI interview";

10.     "Outside experts";

11.     "Ray Fournier who worked with the State Department's office of diplomatic security";

12.     "federal investigators, who questioned whether students' records were remotely accessed from China" – although the article was unclear about whether the source of this assertion was indeed "federal investigators" or someone who claimed to know what federal investigators "questioned";

13.     "Chen's daughter . . . who also works at UMT" – here too the article was unclear about whether a statement attributed to her came directly from her or from someone else, although later in the article there was another statement specifically attributed to "Chen's daughter";

14.     "Emails obtained by Fox News," including a statement that the article attributed to "[a]n FBI agent in one email exchange";

15.     "DoD chief for Voluntary Education Assistance, . . . [who] referred questions to [a] Pentagon spokesperson" and an email from the spokesperson;

16.     "Sources";

17.     "A FOIA request filed by Fox News Senior Executive Producer Pamela Browne"; and

18.     "A school representative."

In the only direct reference to someone bound by FED. R. CRIM. P. 6(e) – an attorney for the government or government personnel deemed necessary to assist the attorney for the government – the article stated that those contacted would not comment.

Assuming for argument that some of the information in the article came from the government, there still would be no violation of Rule 6(e).  This is so because statements by the government concerning a *law enforcement* investigation are not the same as statements about a *grand jury* investigation, "because the latter is a Rule 6(e) violation while the former is not." *Rosen*, 471 F. Supp.2d at 655.  *See also*, *In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999) ("[T]he Rule itself[] reflect[s] the need to preserve the secrecy of the *grand jury* proceedings themselves.  It is therefore necessary to differentiate between statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a *grand jury's* investigation, a distinction of the utmost significance upon which several circuits have already remarked.") (emphasis by the court).

Because the "disclosures" of which Chen complains – even if they were attributable to the government – did not reveal any "matters occurring before the grand jury" there was no violation of FED. R. CRIM. P. 6(e).

-5-

II.     CHEN HAS MADE NO *PRIMA FACIE* SHOWING MERITING A HEARING.

The Magistrate Judge properly denied Chen's motion without holding an evidentiary

hearing, and this Court should as well.   *Rosen* is again instructive:

> Because law enforcement investigations often parallel grand jury investigations,
> news reports about such investigations or its targets may emanate from either or
> both sources, and thus may or may not constitute disclosures violative of Rule
> 6(e). . . . Courts have therefore sensibly determined that a hearing on a claimed
> Rule 6(e) violation will not be held absent a showing of a *prima facie* Rule 6(e)
> violation. . . . If no *prima facie* case is shown, no hearing is warranted, and *a
> fortiori* the claim fails.

471 F. Supp. 2d at 656 (citation omitted).

The "threshold issue to resolve" then, *id.*, is whether Chen has made a *prima facie*

showing of a Rule 6(e) violation.  She has not.  Indeed, *Rosen* involved similar circumstances,

but involved several news articles reported over an extended period of time, which is not the case

alleged here.  Nonetheless, Judge Ellis found that a *prima facie* had not been made:

> Simply put, the media reports do not contain the detail and specificity necessary
> to reflect a disclosure of "matters occurring before the grand jury."  In particular,
> the media reports identify no grand jury witnesses, disclose no questions that were
> asked or would be asked of witnesses in the grand jury, nor do the reports even
> describe or summarize any grand jury witness' testimony.  Indeed, the reports
> never even mention a grand jury investigation.  Instead, the reports reference only
> a "government investigation," which can, and in this case did, take many forms
> independent of a grand jury inquiry.

                                                * * *

> [D]efendants' cited reports here make no explicit reference to grand jury
> proceedings and lack the specificity and detail that would warrant an inference
> that the disclosures relate to "matters occurring before the grand jury."

> In sum, it is apparent that defendants' cited media reports fall short of establishing
> a *prima facie* case of disclosure of any "matters occurring before the grand jury,"
> and hence defendants' claims in this regard must fail.

471 F. Supp. 2d at 656.  *See also In re Sealed Case No. 99-3091*, 192 F.3d at 1001 ("A *prima facie* violation based on a news report is established by showing that the report discloses "matters occurring before the grand jury" and indicates that sources of the information include government attorneys.").

Because the media reports cited by Chen, which are essentially duplicative of one another, involved even less "specificity and detail" than the several articles reviewed in *Rosen* and *In re Sealed Case No. 99-3091*, she has not made the required *prima facie* showing. Accordingly, as in *Rosen*, "no hearing is warranted, and *a fortiori* the claim fails."

III.    NEITHER THE MAGISTRATE JUDGE NOR THIS COURT HAS JURISDICTION TO ENTERTAIN THE DEFENDANT'S MOTION.

To the extent that the Privacy Act provides any remedy for the alleged violations claimed by Chen, the Act limits the remedy of any claimant to a civil action and expressly provides that "the district courts of the United States shall have jurisdiction in the matter[]."  5 U.S.C. § 552a(g)(1).  *See also Id*., § 552a(g)(5) ("An action to enforce any liability created under this section may be brought in the district court of the United States . . . .").  As the Magistrate Judge determined, the court did not have jurisdiction to hear Chen's motion.  For the same reasons, this Court as well is without jurisdiction to entertain the matter – at least in its present procedural posture.  If Chen wishes to seek relief under the Privacy Act, the only avenue is a civil action brought as an original action filed in the district court.

IV.   EVIDENCE COLLECTED DURING THE EXECUTION OF A SEARCH WARRANT DOES NOT
      CONSTITUTE A "SYSTEM OF RECORDS" WITHIN THE MEANING OF THE PRIVACY ACT.

Chen has made no effort to show that the photographs in question, or that evidence

gathered in a search in general, are maintained as part of a "system of records" within the

meaning of 5 U.S.C. § 552a(5), which provides:

> [T]he term "system of records" means a group of any records under the control of
> any agency from which information is retrieved by the name of the individual or
> by some identifying number, symbol, or other identifying particular assigned to
> the individual.

*Id*.

Certainly the FBI keeps meticulous track of the locations from which evidence is seized

during a search, and it keeps scrupulous records necessary to establish the chain of custody of

any evidence seized.  The evidence seized from the premises to be searched would be placed in

an evidence bag, and a record would be kept of precisely where on the premises the items in the

evidence bag were found.  Presumably, however, a description of *each and every* item seized

from the premises would not be routinely created and maintained in connection with each and

every search that the FBI conducts.  Presumably, as the evidence from a search is reviewed by

the agents and the prosecutors, relevant items might be noted for particular attention, but such

work product might very well not associate the evidence with any identifiable individual.  The

relevance of the items and the methods for cataloging it would depend, of course, upon the

nature of each individual investigation.  The evidence collected during a search therefore might

or might not be maintained in a given evidence bag or other container identified as being

associated with a *particular* individual or any individual.  Presumably, this would be even less

the case with each and every item contained within the evidence bag.  In an immigration fraud

case, for example, a number of fraudulent passports might be found in the drawer of a bedside

-8-

table in a residence, seized, and placed in an evidence bag.  The evidence bag would of course

note the precise location from which the passports were seized and would presumably bear a

general description of the items in the bag.  It might well be the case, however, that the

individual names on the passports – fictitious or otherwise – would not be maintained in some

searchable database of the FBI.  The same could be said of evidence seized during the search of a

university suspected of misappropriating and inappropriately disclosing personal and

professional information collected from military personnel who took classes from the university.

It might well be the case that the seizure of the computers of the university might capture the

names and other information of thousands of military personnel, but whether the individual

names could be found in FBI databases is another question entirely.[2]

Chen has failed to show that evidence seized during a search conducted in a criminal

investigation constitutes records that are "contained in a system of records."  5 U.S.C. § 552a(b).

She has failed to show that such records are "retrieved by the name of the individual or by some

identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C.

§ 552a(a5).  It does not matter whether the evidence seized during a search in this particular

investigation might be associated with Chen's name.  We are talking here about a "*system* of

records," not individual instances where a particular government record might be associated with

a particular individual.  In the hypothetical investigations discussed above, the names of the

persons on the fraudulent passports or the names of the military personnel in the electronic

---

[2] When a "forensic image" of a computer is made during a search, it is not produced in a "human
readable" format.  For agents and prosecutors to examine the electronic evidence, it first must be
rendered intelligible by using a separate program, such as Forensic Toolkit.  As this is done for
the particular needs of a given investigation, presumably the "human readable" result would not
become part of a larger, general FBI database.

evidence would presumably not be "retrieved" – or even retrievable – by their names, while the name of the subject of the investigation, if identified, might be associated with the evidence.  The very same evidence, however, cannot be a "system of records" for the subject and *not* a "system of records" for those appearing on the passports or in the electronic evidence.  It either is a "system" or it is not.  The entire structure of the Privacy Act does not permit an interpretation in which a collection of evidence is and at the same time is not a "system of records," depending upon who is asking about them.

Similarly, the limitations imposed by the Privacy Act upon the dissemination of evidence obtained in a search cannot logically apply to evidence seized during a search.  By its terms, the Act provides:

> No agency shall disclose any record which is contained in a system of records . . . to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . to another agency . . . of the United States for a . . . criminal law enforcement activity if the activity is authorized by law, and if *the head of the agency . . . has made a written request* to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought.

5 U.S.C. § 552a(b)(7) (emphasis added).  It would be absurd to interpret the Privacy Act to require the FBI to obtain the written consent of the subject of an investigation before it could share evidence from a search with the DEA or ATF unless the Administrator or Director specifically asked for it in writing with the particularity demanded by this provision.

Application of the requirements of the Act to evidence sought by a search warrant would be similarly illogical.  For example, the Act provides:

> Each agency that maintains a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs [and] inform each individual

-10-

whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual . . . the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary; . . . the principal purpose or purposes for which the information is intended to be used; . . . the routine uses which may be made of the information . . . ; [and] the effects on him, if any, of not providing all or any part of the requested information.

*Id.*, § 552a(e)(2) & (3). Again, it would be foolish to require the FBI to consider, before executing a search warrant, whether it could simply "collect [the] information to the greatest extent practicable directly from the subject" and then to present the subject with a form stating, among other things, "the principal purpose or purposes for which the information is intended to be used."

Another example is found in section 552a(d):

Each agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof . . . ; permit the individual to request amendment of a record pertaining to him and . . . not later than 10 days . . . after the date of receipt of such request . . . promptly either . . . make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or . . . inform the individual of its refusal to amend the record . . . , the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official.

5 U.S.C. § 552a(d)(1) & (2) (internal punctuation omitted). Each agency that maintains a system of records must also:

permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, and not later than 30 days . . . from the date on which the individual requests such review, complete such review and make a final determination . . . and if, after his review, the reviewing official also refuses to amend the record in accordance with the request, permit the individual to file with the agency a concise statement setting forth the reasons for his

> disagreement with the refusal of the agency, and notify the individual of the
> provisions for judicial review of the reviewing official's determination . . . .

*Id.*, § 552a(d)(3) (internal punctuation omitted).  It is beyond imagination that Congress intended

that in the context of a search warrant obtained in a criminal investigation, a subject of the

investigation would be permitted "to gain access to his record *or to any information pertaining to*

*him which is contained in the system*, [and] permit him . . . to review the record and have a copy

made of all or any portion thereof."  *Id.*, § 552a(d)(1) (emphasis added).  It is similarly

unimaginable that Congress intended for this elaborate review process to apply to evidence

obtained during the execution of a search.

Chen's reliance upon *Henke v. U.S. Department of Commerce*, 83 F.3d 1453 (D.C. Cir.

1996) is of no help to her.  Indeed, it is contrary to her argument.  First, as the court in *Henke*

observed, if the contents of evidence seized during any search warrant were suddenly deemed a

"system of records" – which no court as yet done – the FBI might lose the ability "to invoke the

exemptions in the Privacy Act which Congress intended to protect disclosure of national security

information, confidential law enforcement information, or other information from confidential

sources." 83 F.3d at 1461.  Obviously, this was not Congress's intent in enacting the Privacy

Act.

> We start with "the fundamental canon that statutory interpretation begins with the
> language of the statute itself."  In every case, however, we must recognize that
> "the meaning of statutory language, plain or not, depends on context," a concern
> which is brought into high relief here by the fact that the determination that a
> system of records exists triggers virtually all of the other substantive provisions of
> the Privacy Act, such as an individual's right to receive copies and to request
> amendment of her records.

83 F.3d at 1453 (citations omitted).

Not only is it entirely implausible that Congress intended such consequences, to include evidence seized during the execution of a search within the definition of a "system of records" would be entirely at odds with the entire purpose for which the Act was written, which is "to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Id.*, at 1456-57. Stated differently, the Act's "objective [is] assuring information quality by obtaining the views of persons with the interest and ability to contribute to the accuracy of agency records." *Id.*, 1457, n.2 (citation omitted).

As the movant, Chen had the burden of establishing that the photographs seized during the search of her residence were "record[s] . . . contained in a system of records" within the meaning of 5 U.S.C. § 552a(b). This she failed to do, both before the Magistrate Judge and in the Court. Accordingly, Chen's second motion to show cause was properly denied by Judge Anderson and her objection should be overruled.

V.      CHEN HAS OFFERED NO EVIDENCE TO SUGGEST THAT STEPHEN RHOADS WAS AN AGENT OF THE FBI.

Nothing in Chen's motion establishes that Stephen Rhoads was a "*de facto* agent" of the FBI. Chen Obj. 5. The only case relied upon by Chen for this proposition is *Schmitt v. True*, 387 F. Supp. 2d 622 (E.D. Va. 2005), which, in a Sixth Amendment context, stated that "agency is created by the agreement to act on behalf of the state and pursuant to its instructions." *Id.* at 646. But there is nothing in the record (or anywhere else) to suggest that whatever may have been discussed with or disclosed to the media by Mr. Rhoads was done "on behalf of the [FBI] and pursuant to its instructions." Moreover, as the court in *Schmitt* made clear, the question of whether an individual is an agent of the government rests upon "long-standing, general principles

of agency law." *Id*.  These principles make clear that any putative agency relationship between the government and Mr. Rhoads – if there ever were one – ended long before any communications he may have had with the media.

The Restatement (Third) of Agency provides that "[a]n agent's actual authority terminates . . . upon the occurrence of circumstances on the basis of which the agent should reasonably conclude that the principal no longer would assent to the agent's taking action on the principal's behalf."  RESTATEMENT (THIRD) OF AGENCY § 3.09 (2006).  Further, an agent's apparent authority "ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority."  *Id*. § 311.  Nothing in Chen's motion contains any basis to conclude that, more than four years after the execution of the search of Chen's residence, the circumstances could have led Mr. Rhoads to conclude that – if it ever did – the FBI would assent to his taking action on its behalf.  For similar reason, under no circumstance would it be reasonable for a third party to conclude that Mr. Rhoads acted with the actual authority of the FBI.

Accordingly, to the extent that Chen's motion was based upon the actions of Stephen Rhoads, her motion was properly denied by Judge Anderson.  Accordingly, this Court should reject Chen's objection as well.

CONCLUSION

Chen's motions before the Magistrate Judge were meritless and were properly denied by the court.  For the same reasons argued there, Judge Anderson's rulings should be upheld. Because Chen had a full and fair hearing before Judge Anderson on all of the very same issues she now raises, the record of which is available to the Court, there is no need for further hearings.  For all of the reasons discussed above, Chen's objection should be overruled on the papers.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____/s/_____
James P. Gillis
Assistant United States Attorney

-15-

CERTIFICATE OF SERVICE

I certify that on November 16, 2017, I filed the foregoing using the ECF system, which

will send a copy to defense counsel of record:

      John C. Kiyonaga
      600 Cameron Street
      Alexandria, VA 22314
      john@johnckiyonaga.com

                              /s/
                            James P. Gillis
                            Assistant United States Attorney